Number 1830652, and you are Mr. David O'Quinn, your honor. Okay, thank you, sorry. Yes. No problem. May it please the court, I'm here on behalf of Huntington Ingalls, which is the successor to Avondale Shipyards. The parties have referred to Avondale as Avondale in the briefs, and I'll do so this morning, as we do commonly refer to it in these proceedings. Your honors, we seek reversal of the district court's order remanding this case to state court, finding that there was no federal jurisdiction under the Federal Officer Removal Statute 28 U.S.C. 1442A1. The case presents a single issue, whether the claims in this case relate to an act under color of federal law. As your honors are certainly aware, in 2011, Congress amended the Federal Officer Removal Statute to where jurisdiction no longer be . . . This status as working for the Navy doesn't change anything, because you're now arguing that we should not follow Bartell at SEC. Yep. But you in your brief argued that even if we did, you'd still win this case. I think that Bartell is distinguishable, because in that case, the plaintiff was just a person present on a boat that had asbestos. In our case, the Lattale case, Mr. Lattale was serving on a vessel in the Navy and was present on that vessel while Avondale was refurbishing and repairing the vessel and required to use asbestos by the federal government who monitored the site. But our primary argument, your honor, is that the relating to issue has, with respect, not been decided by this court and would include . . . But if you lose on that issue . . . Yes, ma'am. . . . do you lose the case? Do you lose the, at least not the whole case, but the federal jurisdiction part of the case? I think it makes it a lot harder, obviously, because of the Mawson case, where the guy was a worker at Avondale and was exposed and limited it to failure to warrant claims. But we do advance in our briefs and maintain that there is a sufficient causal connection between the requirement that we use asbestos and the injury suffered by Mr. Lattale in this case. We do argue that, your honor. Okay, and that would then be the relating to. That would be then the causal nexus, however it defines. We have not abandoned the causal nexus argument. We continue to advance that argument, primarily distinguishing Bartel, where it was much more attenuated. How many more of these cases are there, by the way? By these cases, do you mean . . . Cases arising out of Avondale shipyards with these, everybody claiming asbestos injuries. I was drafted to do the appeal only, your honor, but I know that there are probably dozens. I don't know the exact number. I apologize. That have this same issue of remand versus maintaining federal jurisdiction, or are they in state court and nobody tried to take them to federal? This one was filed before the Mawson case, this appeal. Presently, I don't think that there's any intention to appeal unless we can get a favorable result. I can't say that with 100%. It will never happen. But I think the situation now is we believe and maintain that this court has not addressed the relating to issue as it applies to claims of this type. If you look back through the case law, starting with—your honor was on the panel in Bartel. In that case, there's no indication that the relating to issue was presented to that court. It was decided under the Foreign Act under color of state law language. But is that case—I mean, you're basically saying we didn't know what we were doing. That's fine. But if—is that case distinguishable even assuming arguendo we did know what we were doing, which is always a nice thing to assume? Two things. First of all, I do think it's distinguishable because of the status of the plaintiff. And I'm not arguing that the court didn't know what they were doing. I'm arguing that the issue was not properly presented to the court or considered by the court. And after Bartel, the Savoy case came up, and again, the Savoy court specifically did not address the issue of whether the type of negligence claims we have here, failure to warn, failure to provide an adequate workplace, would have supported federal jurisdiction in that case. Savoy said there's strict liability. That's enough. We're not going to go to that argument. The Zeringue case was essentially a design defect case. It was a strict liability case under Louisiana law. You had to use asbestos. That's a defective design. That's a federal requirement. They say relating to is broader, but Bartel is correct. On Zeringue. That's a really good question. I think it—I don't know if relating to applies to Bartel, but I think it does apply to us. And relating to is broader. I mean, you've seen— So what I'm saying is does Zeringue—I mean, I think you're trying to tee this up for en banc, which is fine, but I'm wondering is that needed if Zeringue is correct that relating to is broader, we understand it, we got it, we don't have to overrule or ignore our precedent in Bartel because that was a different scenario. Can you live with that? Our position on that would be if you say there is a sufficient relating to nexus, whatever the test may be, is it a causal or is it just under the broader relating to, this gentleman was in the Navy. He was on the boat because he was a federal employee. The federal government required us to use asbestos. I think that's sufficient to relate to or to be caused by, but— And why would you have had a duty to warn? Is that the argument of the causal nexus, that unlike your own employees where maybe you had a duty to warn or employees of subcontractors or something, these were employees of the entity that's saying to use asbestos, so it would be their duty to warn Mr. Latiole. Is that the argument? Well, the plaintiff's argument is that we have a duty to warn Mr. Latiole as well and to provide a workplace that would not have exposed him to asbestos even though he was on the boat as a Navy member. Right, but I'm getting back to the causal nexus, however amped up it is. Is that the causal nexus, that the federal government would have had an obligation to him, and that's the federal interest that is missing in, say, the other cases that were settled? Yes. As I understand their claim, yes, Your Honor. Okay. Was there another part to your question? I thought there was, but if not, I'll just continue on. Well, I do have another question, but it wasn't part of the prior one. The other question is we haven't talked very much about this colorable federal defense, and your argument is we'll send it back, but I wonder if on the colorable federal defense, you're not saying that was changed by the 2011 amendment. I'm not saying it was changed, but I think it plays a greater role in the importance of analyzing whether or not the claim relates to the color of federal office because, and this is alluded to in Judge Higginbotham's concurring opinion in, and I may be mispronouncing it, the Legendre case, where the court said it does look like it's broader and this is a significant issue, but we think Bartel's already decided it on these facts and we don't want to interfere with that previous panel's decision. With respect, I think that that court, the Legendre panel, took an unduly restrictive view of the rule of orderliness because this specific issue hasn't been decided. But Judge Higginbotham in his concurrence said, you know, we should really look more carefully at the colorable federal defense part of this because that can supply and inform whether or not there is a colorable, excuse me, a nexus, an association or connection between the claim. But how can there be a colorable federal defense here when you're, you were never told not to warn people. You were told to use asbestos, so the lawsuit was you shouldn't have used asbestos. Then I understand the colorable and, frankly, the causal nexus. However, if you were told use asbestos but nobody said you can't warn people and let's put aside Latty Olay's status as a Navy person and say he was an employee of someone else, they didn't say you couldn't warn. So how is that even a, even if we decided in your favor or the en banc court took it and resolved this whole relating to, it doesn't change the colorable federal defense isn't there, is it? It is there, Your Honor. Now the district court, as you pointed out, Judge Engelhardt did not reach it. He based his decision on Bartel and the causal nexus and we say a more restrictive test than should be applied now under the new language of the relating to statute. But we did have at the district court level, you need three things for a government contractor. You need precise regulation, and we had that. We had to use asbestos. You have to have compliance. And we're only liable if we fail to warn of risks that were unknown to the government. And we have in the record in the district court an expert report of a public safety expert, Mr. Christopher Herfel, who said now the government knew about this stuff since at least the 40s and 50s. It knew at least as much as Avondale, probably more. And at this stage we don't have to convince a jury or the trier of fact of that. We just need a colorable defense. And the law is we are only required to warn of those things that the government did not already know, and we have an expert report that says the government knew. So I think that's certainly a colorable defense. And back to what Judge Higginbotham said, if you've got a colorable federal defense, isn't that exactly the claims that should be provided for under the federal officer removal statute? Because the purpose of that statute is to see that a federal officer or someone assisting that officer... And that was not in play in Bartel. No, ma'am. I just remember Judge Riegel asking about whether he was breathing asbestos as he lay in the ships during World War II. Not your typical oral argument question. Briefly, I'm glad to respond also to you, Judge Higginbotham, but that's why when you asked me would it apply to Bartel, I don't know. I don't know if Bartel would satisfy the relating to test. I just don't know. But did you have a question? I was going to ask, I understand your federal, the colorable federal defense argument today. My sense of the brief is that you specifically ask us not to reach that. And I think this is what Judge Haynes was getting at at the beginning of her question, which is, why is it that you specifically tell us don't reach questions not passed upon, just send that back? That's not a basis for finding removability. Well, Judge Engelhardt did not reach the issue. He stopped at causal nexus. So we didn't think that that issue had been ruled upon by the district court. It was not right for review. My understanding of the previous treatments of these issues is the court would typically remand. But we did argue that to the district court. We did support it with an expert report. And we do have a colorable federal defense. The only question is, should we do it in the district court here, in the Eastern District, or should we go back to state court? Can I take you back to your first argument about how the Fifth Circuit has never passed on this question? So I won't try to pronounce it just like you didn't. But the opinion that Judge Higginson wrote for our court, in which Judge Higginbotham wrote the concurrence about Boyle, this argument was presented to that panel. I'm counting three paragraphs in a paragraph-long footnote, footnote five, six, I'm sorry, that talk about the fact that you argued that these previous panels were applying the pre-2011 text. You argue that the benefit didn't have the benefit of this argument in either Savoy or in Bartel. And that court said that they were foreclosed. Yes, Your Honor. Do you have any, and I recognize you think that was wrong. I understand that. But do you have a rule of order in a citation that would say that we are somehow not bound by the way that Legendre. Legendre. Legendre. Thank you, Your Honor. I'm mispronouncing it. I said I wasn't going to try, and then I tried. We're not bound by it. Yes, Your Honor. In our brief, we talked about, first of all, the Supreme Court precedent that says that unless the actual issue is decided, it does not have an effect on later. But does the Supreme Court decide our rule of order? You know what? This is a big mess, and Huntington has lost every single case. So at some point, why don't you just seek en banc review to go back to the relating to language? Nothing would make us happier than to get an en banc review. Well, it seems to me that your brief and your arguments all go off on, you know, this doesn't apply, that doesn't apply, that wasn't argued, and so on. And I couldn't see with clarity that the most obvious potential solution was something that your client advocated. I apologize for that, but I think we wanted to cover the waterfront. Yeah. But I'm here today before you to address these concerns of it's a big mess. And the reason it's a big mess, in our view respectfully, is that Bartel didn't address the issue. Later cases didn't really address the issue. Lejeune didn't address the issue. It said that the argument was made. It called it a significant argument. It said that may be right. It cited cases from the Fourth and Third Circuit that said there's now a broader view of this. But these facts before us were addressed in Bartel, and we find ourselves and feel ourselves to be bound by that decision. Respectfully, I suggest that that is an unduly restrictive view of the rule of orderliness. But I think we, the Fifth Circuit, decide our own rule of orderliness. The Supreme Court can say what its precedent is, and, of course, the Supreme Court can reverse us as they wish. But I think we, the Fifth Circuit, decide our own rule of orderliness. What are we going to follow? Because it's not a law, a statute, that says we have to follow our prior cases. This is a decision of us so that we don't have the chaos of every panel deciding something different about the law. I refer, Your Honor, to the Apton v. McCall case, 888-F3-129-136, footnote 4. The case is a little different because it wasn't the precedential effect of a panel decision, but it said a previous decision wasn't precedent because it didn't consider, systematically analyze, or grapple with a controlling Supreme Court decision. Here we have a change in the statute. We have the Sykes case also, which they rely on, which after analyzing an issue – may I just answer this one question? Quickly. Thank you very much. You do have your own rules of orderliness, but if an issue was not addressed by a previous panel, then the issue has never been decided by this Court. Okay, thank you. Thank you very much, Your Honor. Mr. Brady? Good morning. Sean Brady here on behalf of the plaintiff, Apton v. James Latchley. Well, now Mr. Latchley passed away. That's correct, Your Honor. So why didn't you just substitute the executor of his estate? I believe that they have been substituted in the state court. I'm not sure if that's required by the Louisiana Code of Civil Procedure, but my understanding is that the successors have been substituted. Okay, well, normally they're substituted, so I was surprised. How much you need to do it here is, I guess, the question. And if that's necessary, Your Honor, we could take steps to remedy that. There is an executor, or whatever the term in Louisiana is for executor, that may be a succession representative. It might just be devolved to his daughter. There's someone. Yes, ma'am, absolutely. To whom this cause of action, if any, belongs. That is correct. And that someone has authorized you to be here. That's correct. Okay. And I believe they've been substituted in the state court. Okay. Mr. Latchley was a Navy veteran who contracted mesothelioma. He was exposed to asbestos at the former Avondale Shipyard, which is owned by the appellant Huntington Ingalls. How long did he serve in the Navy? I'm not sure how long he served in the Navy. I know that he was at Avondale on this particular ship for, I think it was a period of about a year, in like 1965 and 1966. I'm not sure how long he actually served in the Navy in total. But his claim against Avondale in this case is based solely on negligence. But why don't you address my question, which is, I mean, we may be all marching towards en banc, and that's fine, but I want to be sure if we're marching there that it's the right case marching there. Why isn't this different from, I think it was Grimes and Burkhart that settled, that were in front of us originally? Why isn't this different because he was a Navy officer and therefore any duty to warn would have been on his employer, the Navy, which seems sort of federal to me? Right. And, Your Honor, I think the answer to that question is because the question on removal, the test on removal focuses not on the identity of the plaintiff but on the claims that the plaintiff is making and also on the defendant and the defendant's actions. Yes, but the claim is failure to warn. Yes, that's correct. And why isn't that on the Navy rather than on Avondale, unlike the other Grimes, Burkhart, et al., where it was their employee or subcontractor or whoever? I'll say two things about that, Your Honor. One, the issue of the duty to warn and whether or not Avondale had a duty to warn Mr. Latchley really goes to the merits of the case, which would be decided by the state court as opposed to But we're looking at the merits of the case by saying it's negligence, not strict liability. That's the only way you win this. If we say it's strict liability, you lose because we have cases on that, Syringa, et cetera, post-Bartel. So we have to look at the merits to know what's being argued. We don't have to find the merits. We don't have to say they didn't warn. Maybe they did warn. But we have to look at what the argument is, and I'm saying why isn't this different because he was an employee of the Navy? I understand it's not who he was an employee of that is decisive, but in this case of failure to warn, why doesn't that alter this causal nexus argument? And I think the answer to that, Your Honor, is the thing I alluded to a second ago, which is the focus in the causal nexus test is on the claim that is being made, which is failure to warn as opposed to the person that is making it. The claim is failure to warn, and the focus is on that claim and its connection to any act, if there was one, under color of federal authority that was engaged in by the defendant. The focus there is on the claim. So even if it was a meritless allegation, you're saying we can't examine the merits of failure to warn. That's correct. I'd say that's correct, Your Honor. Does the Ferry's Doctrine apply here? I'm sorry? The Ferry's Doctrine, F-E-R-E-S. The Ferry's Doctrine is from the U.S. Obviously this is a novelty. Right. Which insulates the U. Well, maybe that's my point. I thought servicemen are bound. I'm wrong. I guess I'm wrong because that's where you can't sue the government when you've been in the service. Boyle is where you can. Going back in the memory banks here, the Ferry's refers to claims against the government as opposed to claims against private contractors. Sorry about that. Counsel, before we move on, I want to make sure I understand your answer to Judge Haynes' question. So as I understand what you're saying about your client's claim, is that it's no different than the other two that were settled or any of the other five that are in the post-2011 amendments to the officer removal statute? For the purposes of what we're talking about today and whether or not this case is properly removable under Section 1442, it's no different. So there would be no circumstance if, when, we're marching to an en banc consideration of this that we would hear from this client, your client, that this is somehow a poor vehicle for considering the question about related to. I don't think so, Your Honor. I mean, on the spot. I'm not sure what my client would say about that, but I don't see the difference. Okay. But on colorable federal defense, you do look not totally at the merits, but you look a little bit at the merits because it has to be colorable. So is this colorable? Is their federal defense colorable in this case? Yes. Absolutely not, Your Honor. So should we reach that? I know they don't want us to. And I understand generally we send things back to the district court when they haven't been decided, but this is jurisdictional and should we really be ping-ponging back and forth between the district and Fifth Circuit on jurisdiction? So do we even have to reach the causal nexus if there's no colorable federal defense? Well, it's a four-part test. And that's one of the parts. Each part has to be met, and if the colorable defense prong is not met, then... Okay. So why is it not met? Why is the colorable defense prong not met? Well, I would preface this by saying that this is not an issue that was briefed in this court, but I would say that the colorable defense prong is not met here because under the Jowers case, I think that deals with failure to warn claims in colorable federal defenses, there has to be some instruction given with respect to warnings by the federal government. And here, the evidence, I believe, is undisputed that there was absolutely no direction, no involvement of the Navy in whether or how Avondale warned people about the hazards of asbestos. So when you look at that, the very first prong of the Boyle-slash-Jowers test isn't met here. And again, that's one of those cases where you need all three, and Avondale doesn't have the first one. So on the march to en banc, I mean, I would hate to have us take a case en banc to decide an issue that doesn't matter to the outcome. So if colorable federal defense gets you back to state court, that would seem to be important. That would be, Your Honor. Because then the causal nexus issue doesn't matter, right? That's correct. That's correct. Turning back to this court's precedent, I think that is the first and most important reason why I think that Your Honors have alluded to that in questioning of Avondale's counsel. The most important reason why this case should be affirmed and should be remanded is because there have been three different panels of this court that have decided just in the last year that claims, failure-to-warm claims against Avondale, just like Mr. Latchley's claims, should be remanded. Okay, but here's the problem, is, again, you could win the battle and lose the war. And I'm wanting to make sure I understand because the question of whether to grant en banc is not orally argued. En banc is often. It doesn't have to be, but often. But the question is not. So make your case. If we were to rule as a panel in your favor based on these cases you're citing, make your case for why it shouldn't go en banc, or why it should. That's a very good question. And I think... I can't remember if it was Judge Oldham or you, Judge Haynes, that alluded to this earlier. It's Zerang. Zerang has, as Avondale's counsel put it, grappled with the question of what the effect of the addition of that relating to language was and had made the determination that even under that broadened statute, as Zerang, the panel there, recognized it, the statute was broader. But even under the amended statute, Zerang nevertheless concluded that a case like Bartel, which you were on the panel, and hence a case like this one, is not removable. So I don't really think there is the need to go en banc here. And then, of course, Lejean relied on Bartel, and the cases that followed Lejean also relied on Bartel. His argument is Bartel was a mess because the argument wasn't made, and so we got it wrong without knowing we got it wrong. That's essentially his argument. And again, it doesn't matter whether I was on the panel or not. We have to follow it with or without me, so let's take it out of me, for better or for worse. All that goes away in en banc. We can undo... I mean, in Reyes-Contreras, we just overruled 20 cases. Okay? So that's the point of en banc, is we can take a line of cases and say, you know, they did their best, but we don't agree anymore, and we're going to overrule those and we're going to move on. So what's your argument against doing that? What Avondale's saying here is the reason to go en banc is because this Court has never considered the effect of the 2011 amendment to Section 1442, and I would say that this Court has considered it in several different... What I'm saying is related to has to have meaning. It has to be broader than the preamended text. And so I think what Judge Haynes and I are both grappling with and we're asking you is not... This is a separate question from the rule of orderliness issue as to what's been decided and who's decided it. Why does related to not include the only reason there's asbestos in this particular vessel is that the United States Navy made us put it there? That seems pretty related to the federal officer defense. I think, Your Honor, I'd say this. It's not related to under this Court's precedent. And I would go back to the words of the statute. The case has to be... There has to be a connection between the cause of action and an act under color of federal office. It's not just a connection between the cause of action and the fact that the government contractor had a government contract. It has to be a connection to an act. And again, in the Zoran case, after having grappled with the question of whether or not the 2011 amendment broadened the statute or not, the Court said that, again, there must be a connection between the charged conduct and the asserted federal authority. Even after having looked at the question, they still went back... The panel in that case still went back to there has to be a connection to the charged conduct. To the charged conduct. So you're saying the fact that asbestos is, to my knowledge, the only cause of mesothelioma isn't enough because the argument you're making is not strict liability on asbestos, which is Zoran, but is negligence and warning of the problems of asbestos. That's correct, Your Honor. And that's what makes the result of this case different from Zoran. And I'll also say, Your Honor, there was some discussion about the Third Circuit case and the Fourth Circuit case. They believe that's Papp and Sawyer. In both of those cases, the courts went beyond just simply saying, oh, well, of course, there's a government contract here, so that's enough. Those courts went beyond that and said, we're going to require evidence. Because this is a failure to warn claim, we're going to require evidence that the government played some role in warnings. And frankly, that is something that Avondale would go beyond in this case and say that even a finding or evidence that the government has something to do with warnings is not even necessary anymore. Okay. So you're saying even under, you know, Judge Oldham makes the point that we don't just add things to a statute for no reason. Correct. Having added a phrase, that phrase has to have meaning. You're saying even with that meaning that broadens the original statute, you still have to look at what we're talking about. And what we're talking about here has nothing to do with the government involvement. If we were talking about you shouldn't have used asbestos, then you would say that meets the relating to. I would, in a strict liability case. And I think that would be the result, that's a result that's foreclosed by the Zarang case. But this case, again, is different because... But if we cannot get mesothelioma without asbestos, then how is that not a causal nexus? Even under pre-Bartel. Even under pre-2011. You have to look again, and Zarang makes this clear, about what the connection has to be between. It has to be between the charged conduct, which here is a failure to warn about the hazards of asbestos, as opposed to merely using asbestos. That charged conduct here, the failure to warn about asbestos, there is no relation to any act that Avondale performed under color of federal office. In what years was Mr. Latula working when Avondale was there? What were the years again? He began in late 1965 and may have stayed there through early 1967. Okay. So I guess what I would go back to, Your Honor, is that I think Zarang is very important, and I think the Court should take another look at Zarang. Not only did it say that the statute is broader, but yet a case like Bartel and a case like this one doesn't fall within the circle. One of the arguments that Avondale makes in this case is about the plain meaning of the statute, and Zarang considered that too. The panel says that we're considering the plain meaning of the term related to, and that panel even looked at the same Morales case from the Supreme Court that Avondale uses to support its argument. So that is not a res nova issue here. Zarang has considered and rejected the argument that Avondale is making here. One other point. So would it be your position that because of Zarang clearly laying all this out, our case law is not a mess? I don't think that it is, Your Honor. I think this Court's cases from Bartel through Savoy, through Zarang, through Lejean, and the two cases that have followed Lejean have always been very clear that when the claim is a failure to warn claim and there is no evidence that the defendant, you know, that the government participated in the defendant's safety practices at all, that that failure to warn claim is not removable, and that has been the rule through every one of those cases. Would you point to the precise language in Zarang that you think renders this case non-removable? Zarang considered the plain meaning of the phrase relating to. Right. Then they cited and quoted Morales, and then they held that before and after the 2011 amendment, Section 1442 requires a causal nexus between the charge conduct and official authority, and that's 846 F. 3rd, 793. Right, but then they also say Crane has established the requisite causal nexus. Its relationship with Zarang derives solely from its official authority to provide parts, and that authority relates to Crane's allegedly improper actions, namely the use of asbestos. It says it is plain that under relating to, some attenuation is permissible. Were we to require the level of precision requested by Zarang, we would unduly undermine the purpose of 1442. I mean, Zarang looks like a real... For one thing, it denied remand, and for another thing it said we can't consider this relating to to be a narrowing sort of phrase. That's correct, Your Honor. In Zarang, what you just read from the Zarang case is... But I don't see that as affording, and it also said we only need to look at one of the causes of action, right? So it really didn't exclude the possibility that failure to warn was within the realm of relating to. It discussed the question of whether a failure to warn claim like Barthel was within the realm of relating to and said that Barthel is outside the circle and is still good law. And then, of course, the Lejean case, which directly addressed the question early last year, came to the conclusion that Barthel is still good law, Barthel is correct. Zarang made the right call with respect to whether or not a case like this is inside or outside the circle. Because Zarang had strict liability for using asbestos. That's correct. Which it does relate to. The portion of the opinion that Judge Jones was referring to is discussing the strict liability claims. But given Judge Oldham's question... Oh, I'm sorry. Go ahead. His question about relating to needs to add something. What does it add in your view? If you were writing, we're on a clean slate, we have no Barthel nothing, we're writing on a clean slate about what does relating to add, what does it add? I would go back to Zarang and what this Court said in Zarang. It allows for some attenuation between the charged conduct and the asserted federal authority. It allows for some attenuation there. I think Zarang put it in terms of we no longer would require precise federal direction, but there has to be some federal direction. There has to be some federal involvement in the acts that are being complained of in order for there to be the causal nexus even under the new relating to language. And I think that's what the language adds. It broadens it somewhat, but everything... We go back to the Watson v. Philip Morris case from the Supreme Court. In the end, the Supreme Court says, look, the statute is broad, but even a broad statute has limits. And that's just where the limits are in this case. That statute, even as amended, does not reach a case like this. Well, you know, I mean, you're splicing causes of action for injury because of asbestos. If this were an ERISA case, it would almost surely be preempted, and not only preempted, but wholly preempted because of the very same language which is relating to. So, I mean, relating to is... Zerang is carefully written, but at the same time, I mean, to me, it just deepens the problems. I agree that relating to does make the statute broader, and Zerang, of course, wrestled with that very question but ultimately came to the conclusion that even under... It depends on what relating to relates to, is your point. That's correct. You're saying, does it relate to, well, there's a government somewhere in the building, in which case you lose, or does it relate to the cause of action being asserted against the defendant here, in which case you win? That's your argument. I have not seen any circuit court that has held that just simply because the government is in the building and is required to use asbestos, that that was enough for a causal nexus to exist. Your Honor, if you have any other questions, I'm happy to answer them, but I think my time is up. Okay, thank you. Thank you. Mr. O'Quinn. Thank you, Your Honor. I think the Court's already picked up on this, but as I think one of Your Honors mentioned, Zerang did not address whether the failure to warn claims present in that case would have independently supported federal jurisdiction. So I don't think it addressed the issue that we have here today before the Court, and it did discuss what relates to means, but I'm not sure really what bearing that had on the holding because it was essentially a strict liability claim that supported jurisdiction in that case. In some measure, I think Zerang deepens the problem. I'd also like to point out, Judge Haynes said it better than me, this gentleman was employed by the Navy, and so there is a federal interest here that was not present in Bartel. He did a better job of articulating it than I did, but that was what I was trying to get to. In Bartel, the guy was just an employee of a civilian contractor and there wasn't that same connection. But he was sort of randomly on a ship, and it was a different case, really. I mean, I'll accept if we messed up in Bartel, we did, and, I mean, that's part of the en banc process, and I'm fine with that. I mean, I get paid the same. But not to say that I want to make mistakes. Don't misunderstand me. But I'm not sure there are the facts here. There are not. I agree with you. And, Your Honor, I am not saying that the Court messed up in Bartel. If anything was messed up, it was the failure to present this issue to you cleanly and properly and concisely in 2015, four years after the amendment. But all that being said, this, I believe, we're not here for en banc, but one of Your Honors mentioned, well, we really don't have a ruling on the colorable government contractor defense. Well, I think the clarification of the statute would be helpful and beneficial at this point in the litigation. Do you have any further questions? I really appreciate your close attention. Counsel, I'm sorry to keep you, but one other question. No, no. It's my pleasure. If we were to straight, if there was no en banc, and if we just straight up affirmed, we would never get a ruling on the federal, on the colorable federal defense claim, right? Because of the way the district court decided this? That's correct. Very good. But we could, and Affirm 47-6, that's true, but if we actually discussed it, we could reach the colorable, there's no law that says we can't reach the colorable federal defense point. That's correct, Your Honor. And we could say we don't need to reach the cause, the causal nexus, because we find no federal, no colorable federal defense. You wouldn't agree with that, but we could do that. I do, but I don't agree that we don't at least have a colorable federal defense. And I also think that the fact that we have a colorable federal defense, and a good one, is exactly the kind of claim that should relate to the color of federal law. The whole purpose of the statute is to get these defenses in federal court and to make sure that the federal interests implicated by those defenses are adjudicated in a federal court. All right. Thank you. Thank you.